**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **GWENDOLYN PARKER,** | § | **CAUSE NO.** _____ |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Hon.** _____**, Judge** |
| **THE UNIVERSITY OF TEXAS** | § | |
| **MEDICAL BRANCH, ,** | § | |
| **Defendants** | § | |
| | § | |
| | § | **Hon.** _____**, Magistrate** |

**PLAINTIFF'S ORIGINAL COMPLIANT FOR EMPLOYMENT DISCRIMINATION
AND DEMAND FOR JURY TRIAL**

**TO THE HONORABLE JUDGE OF SAID COURT:**

    **NOW COMES** Ms. Gwendolyn Parker, hereinafter called Plaintiff, by and through the undersigned counsel, Robert Teir, PLLC, complaining of and about The University of Texas Medical Branch ("UTMB"), _____, hereinafter called Defendants, and for causes of action respectfully alleges and shows unto the honorable Court the following:

**I.    NATURE OF THE CLAIMS**

1.    This is an action for declaratory and equitable relief, as well as for monetary damages, to redress Defendants' unlawful employment practices and retaliation against the Plaintiff, including Defendants' unlawful actions, discrimination, and

retaliation against Plaintiff because of her disability, and because of her race, in
violation of the Americans with Disabilities Act, as amended, 47 U.S.C. §12101, *et.
seq*. (for the disability discrimination, failure to make reasonable accommodations,
and associated retaliation claim), §1981 of the Civil Rights Act of 1866, 42 U.S.C. §
1981 ("Section 1981") (for the race discrimination and associated retaliation claim);
Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et. seq.
("Title [*2] VII") (for the race discrimination, sex discrimination, and pregnancy
discrimination, as well as the retaliation claim); as well as §21.051 and §21.128 of the
Texas Labor Code.

2.     Your Plaintiff, just recently retired, is a very experienced and knowledgeable medical
administrative employee.  Since 2017, Plaintiff was employed by Defendant
University of Texas Medical Branch ("UTMB") as an Administrative Manager in its
Laboratory Services Department.

3.     In 2018, the Plaintiff's position at UTMB was changed, and her title changed to that
of Senior Business Coordinator.  UTMB described the job responsibilities at this
position as managing, coordinating, and supporting the administrative and business
management of her department.

4.     When the Plaintiff's back/disc injury became significantly worse, Plaintiff lost her
ability to do routine physical tasks without significant pain and discomfort.  These
tasks included lifting, bending, carrying, standing up, and walking.

5.     Despite this deterioration of Plaintiff's abilities, Defendant UTMB refused to make
reasonable accommodations to enable her to perform her administrative tasks, which
were supposed to be, and largely were, deskwork and thinking work.  Instead, UTMB

insisted that Plaintiff lift herself up to a standing position, with constant bending, and to stand, for long periods of time, walk a great deal during her workday, and lift and carry heavy boxes.

6.    These imposed work requirements made the Plaintiff's injury worse, made the pain she suffered arising from her injury worse, and left her with seemingly permanent deteriorations in her abilities.  As one example, because of the requirements imposed upon her workday, the Plaintiff had to start walking with the aid of a cane.  She now requires the cane for a walk of any but momentary duration.

7.    When the Plaintiff asked for reasonable accommodations because of her disability, which would have merely reinstated her job to the deskbound administrative work for which she was hired, the result was a campaign of hostility, harassment, isolation, and retaliation.

8.    The Plaintiff's UTMB employment ended when the Plaintiff retired in April of 2021.

9.    Plaintiff made proper, timely, and administratively correct complaints about the job requirements imposed upon her and described, to her employer, her inability to perform them without great pain and discomfort, and without further diminishing her range of physical abilities.  Her inquiries, filings, requests, and complaints did not lead to any constructive change or reform in her job and, therefore, did not lead to any change in her pain, discomfort, or her ability to stand, lift, or walk.

10.    The refusal of Defendant UTMB to make to take the easy and simple steps which would have returned the Plaintiff to the untroublesome, less demanding, underlying

job responsibilities which she enjoyed, and at which she excelled, had a growing, and

lasting, negative effect on Plaintiff's dignity, pride, and confidence.

11.     The Plaintiff has suffered distress, depression, anxiety, and mental anguish, as well as

further deterioration of her physical abilities, as a result of UTMB forcing her to

choose between her job and her health, posture, and abilities.

12.     At various times, UTMB admitted and acknowledged Plaintiff's disability, and the

effect of that disability on her mobility at work.

13.     Defendants' conduct was knowing, malicious, willful, mean spirited, and cold-

hearted, while also demonstrating a reckless disregard for Plaintiff's mental and

physical health, as well as a reckless and callous disregard for the effect on Plaintiff's

daily life, retirement years, and her personal dignity.

14.     The campaign of disability discrimination and retaliation has caused Plaintiff to suffer

substantial economic and non-economic damages, permanent harm to her health and

physical abilities, as well as severe mental anguish and emotional distress.


## II.     JURISDICTION AND VENUE

15.     The honorable Court has subject-matter jurisdiction over this action pursuant to 28

U.S.C. §§ 1331 and 1343, as this action involves federal questions arising from

statutes adopted by Congress and signed into law by the President of the United

States regarding the deprivation of Plaintiff's civil rights, *inter alia*, under Title VII,

Section 1981 and the Americans with Disabilities Act.

16.     The honorable Court has supplemental jurisdiction over Plaintiff's related state law

claims pursuant to 28 U.S.C. § 1367(a) and the holding of *Kokkonen v. Guardian Life*

*Ins. Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 129 L.Ed.2d 391 (1994). *See id*., 511 U.S. at 379, 114 S.Ct. at 1676 (ancillary jurisdiction over state law claims permits "disposition by a single court of claims that are, in varying respects and degrees, factually interdependent").

17.     The honorable Court has personal jurisdiction over the entity Defendant, the University of Texas Medical Branch, because this Defendant is a Texas-based business, with its history, operations, and employees all, or nearly all, in the State of Texas.

18.     The honorable Court has personal jurisdiction over the individual Defendant Ms. Lela V. Lockett-Ware because this Defendant is a citizen and resident of Texas residents, and has far more than minimum contacts with the State of Texas, given her use of real property here, her employment here, and her choice to make Texas her home.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this federal district.

## III.     PARTIES AND SERVICE

20.     Plaintiff, Ms. Gwendolyn Parker, is an individual whose address is 1126 Plum Street, in LaMarque, Texas [77568-5734].

21.     The last three digits of Ms. Parker's (Texas) driver's license number are 335.  The last three digits of her social security number are 088.

22.    Defendant the University of Texas Medical Branch is a corporation based in Texas, and is part of the University of Texas system, and therefore an arm of the state government of Texas.  UTMB is organized under the laws of the State of Texas, and service of process upon this Defendant may be affected pursuant to Rule 4 of the Federal Rules of Civil Procedure.  Service of said Defendant as described above can be affected by personal delivery upon its agent for service of process registered with the honorable Texas Secretary of State, to wit Que Quiere Decir Co., at 301 University Boulevard, in Galveston, Galveston County, Texas [77555-5303], and by direct communication with UTMB's learned legal department.

23.    Defendant the University of Texas Medical Branch has a duty to avoid unnecessary expenses in serving such a summons. The Plaintiff, through counsel, shall notify this Defendant that this action has been commenced in this honorable Court and request that the Defendant waive the unnecessary, costly, and perhaps anachronistic, formal service of a summons.

24.    Defendant Ms. Lela Lockett-Ware, OT, CDMS, CEAS II is an employee of Defendant UTMB, serving as the Institutional ADA Officer, the official in charge of accommodations requests under the Americans with Disabilities Act, including making decisions whether to grant such accommodations.

25.    Service upon Defendant Lockett-Ware may be affected by personal delivery at her place of employment, to wit the Human Resources Department, located at the Lee Hage Jamail Student Center, Room 2.118, on the University of Texas Medical Branch campus in Galveston, Galveston County, Texas [77555-1316].

26.     Defendant Lockett-Ware also has a duty to avoid unnecessary expenses in serving such a summons. The Plaintiff shall notify this Defendant that this action has been commenced in this honorable Court and request that Ms. Lockett-Ware waive service of a summons.

## IV.     CONDITIONS PRECEDENT

27.     This suit is brought within ninety days of the Plaintiff's receipt of the 'right to sue' letter from the United States Equal Employment Opportunity Commission.

28.     All conditions precedent to the commencement of this lawsuit have been fulfilled.

## V.     FACTS

29.     Plaintiff Gwendolyn Parker is an experienced, knowledgeable, understanding, team-oriented, pleasant, and skilled professional, understanding of, and dedicated to, the mission of Defendant UTMB to serve its patients and the community.

30.     The Plaintiff enjoyed working at UTMB and with the many skilled, well educated, and compassionate people who worked there.  The Plaintiff is proud of the tenaciousness, accuracy, and dedication she brought to her UTMB employment.

31.     The Plaintiff is an African American woman.

32.     The Plaintiff is a disabled person, with significantly compromised ability to walk, lift, carry items, and to change from either a sitting or standing position

33.     Plaintiff Parker was employed at Defendant UTMB as a Senior Business Coordinator at UTMB's Laboratory Services Department in Galveston, Texas.  Her job

responsibilities for that position were to manage, coordinate, and support the administrative and business management of the department.

34.    Your Plaintiff was previously employed by Defendant UTMB as a Claims Adjustor and Senior Analyst, from December of 1989 through February of 2005.

35.    On or about February 6, 2017, Ms. Parker returned to, and was re-hired by, UTMB, to work in the latter's Laboratory Services Department.

36.    Defendant Ms. Lela Lockett-Ware was the UTMB employee who oversaw complaints, requests, and concerns employees had concerning disabilities and the Americans With Disabilities Act.  Defendant Lockett-Ware was the UTMB official who directly responded to Plaintiff's request, and the employee who made the decision to deny her the reasonable accommodations for her disability that would have enabled Plaintiff to perform her job comfortably and free of pain.

37.    Gwendolyn Parker's employment featured consistent praise and gratitude from her co-workers and supervisors.  She received consistently positive, encouraging, and gracious reviews, and also received awards and prizes for her above-and-beyond approach to her job, including financial rewards.  She, most recently, received one of these financial awards for excellent teamwork in April of 2021.

38.    Plaintiff Parker was employed by UTMB for many years.  She voluntarily left this employment on or about April 2, 2021.

39.    In June of 2018, the Plaintiff suffered a workplace injury while handling and processing department supplies.  The injury aggravated, and made substantially more difficult and painful, a prior cervical injury.  Plaintiff's injury began with a 1998 bus accident at UTMB, when the Plaintiff injured her hip, shoulder, and lumber 4 and 5.

40.     Client's injury prevents her from standing for prolonged periods of time and makes it difficult for her to walk.

41.     Plaintiff underwent a hip replacement operation in August 2012.  The surgery prevented her from standing for prolonged periods of time, while also limiting her ability to bend, stoop, or lift anything other than the lightest objects.

42.     While Plaintiff recovered from the surgery, she never regained the bending, standing, lifting, and carrying ability she had prior to the procedure

43.     Upon the June 2018 re-injury, Ms. Parker received an electronic mail communication from Ms. Sharlin M. Woods of UTMB, advising her about her choice of treating physician and requesting that Ms. Parker sign the Defendant's "Network Acknowledgment" form.  That form states that Client may have to pay for medical care providers outside the network, and that any refusal to sign the form does not alter the requirement to use in-network providers whenever possible.

44.     On or about March 13, 2019, Plaintiff Parker submitted a request to UTMB for a permanent job accommodation.  Ms. Parker, also that day, informed her manager, Ms. Cindy Lewing, that working after her injury irritated and aggravated her back. Defendant UTMB's Office of Institutional ADA Officer received Plaintiff's request.

45.     On or about March 22, 2019, Plaintiff submitted, and Defendant UTMB received, a 'Physician Work Certification' form, which was completed by Plaintiff's treating physician.   The treating physician stated that Ms. Parker needed to have permanent restrictions on the type of tasks she can perform at her work.  The proscribed tasks included:

a. No lifting

b. No pushing or pulling more than 10 pounds

c. No climbing, crawling, or digging

d. No kneeling or squatting

e. No operating heavy equipment

f. No working at heights

46. In response to this information from Plaintiff's physician, Defendant UTMB declared Client to be a "qualified individual with a disability."

47. In its response to the guidance from the Plaintiff's physician, Defendant UTMB stated that Ms. Parker's department's supplies arrive in bulk, while flat-out denying that Ms. Parker was required to lift boxes as part of her UTMB work.

48. Then, contrary to its statement about the need to lift boxes, Defendant UTMB declares that such boxes would not be a problem because the Department's incoming supplies weigh less than ten pounds, "and are not impactful to your conditions" [sic].

49. Defendant UTMB, perhaps trying to be helpful, added that Ms. Parker can use a stool to access low shelves and that she can reorganize how supply items are arranged on her department's shelves.

50. Defendant UTMB formally denied Plaintiff's request to no longer be responsible for ordering and storing supplies, thereby insisting that she continue to do so, and continue to bend, lift, and carry the onerous, heavy boxes in which they came. No accommodation to the Plaintiff's disability would be made.

51. That is, Defendant UTMB elected to ignore Ms. Parker's disability, situation, and problem by denying the problem out of existence. Unfortunately, the reality was

what it was, regardless of how much Defendant UTMB imperiously declared otherwise.

52. Defendant UTMB then proceeded to formally <u>add</u> the lifting and carrying of laboratory supplies to the Plaintiff's job description.  The Plaintiff's job duties were changed to expressly include ordering and distributing clinical supplies.

53. That is, Defendants UTMB Ms. Lockett-Ware took the polar opposite step and, instead of making a reasonable and easily made accommodation, it added to the Plaintiff's hardship, pain, discomfort, and embarrassment, by formally expanding her responsibilities in direct contravention of her doctor's proscribed task list.

54. Defendants explicitly denied the Plaintiff's request for a permanent accommodation, and, indeed, steadfastly refused to make any accommodation at all.

55. On or about January 7, 2020, Plaintiff was treating with her OB/GYN physician.  At the office visit, the doctor informed Plaintiff that her condition is getting worse and recommended that she see an orthopedic surgeon.

56. Responding nearly immediately to the advice of her OB/GYN physician, Plaintiff scheduled an appointment with Dr. Ronald Lindsey, an orthopedic surgeon.  Dr. Lindsey concluded that Plaintiff's legs will not raise from a seated position.

57. As a result of Plaintiff's visit and treatment with Dr. Lindsey, Dr. Lindsey's colleague, Dr. Brandon Alfred Stein, wrote a letter, to be presented to Defendant UTMB, stating that the Plaintiff should only be permitted to perform light duty at work.

58.    Dr. Stein's letter also requested that, at least for the following two weeks, Plaintiff be permitted to work without any lifting.

59.    The next day, January 8, 2020, Plaintiff tendered the letter from Dr. Stein to Ms. Cindy Lewing, Plaintiff's supervisor.  Ms. Lewing responded by instructing Plaintiff to give the doctor's letter to UTMB's ADA officer, Defendant Ms. Lela Lockett-Ware.  The Plaintiff did so.

60.    On or about January 9, 2020, the Client's position at UTMB began to implode.  The Defendant's ADA officer, Ms. Lela Lockett-Ware, informed Plaintiff , through the Plaintiff's manager, Ms. Cindy Lewing, that she [the Plaintiff] could no longer perform her job if she cannot lift or bend, notwithstanding her being hired for a job that entailed organizational and paperwork tasks.

61.    While Plaintiff recoiled from this news in shock and stress, she was told that it was Ms. Lockett-Ware's direction that she had to leave the premises immediately.

62.    Horrified by this demand, and horrified with being treated like a trespassing criminal, Plaintiff nevertheless responded by trying to continue to be helpful and a team player. She told Lockett-Ware that she would depart, but asked if she could first organize her outstanding tasks and provide instructions for completing work that she had in process.  Ms. Lockett-Ware shrugged off the offer, and further embarrassed Plaintiff by telling Plaintiff to "get out."

63.     Plaintiff, ashamed, embarrassed, and hurt, complied to the demand that she leave the Defendant's premises.

64.    On or about January 28, 2020, Plaintiff again treated with Dr. Lindsey, the orthopedic surgeon.  Dr. Lindsey cleared her to return to work beginning February 3, 2020.

However, Dr. Lindsey's direction was that Plaintiff must continue avoiding any lifting of any item in excess of ten pounds (4.5 kg.). Plaintiff was also directed to minimize bending and stooping.

65. By February of 2020, Plaintiff Parker was walking with the aid of a cane. Plaintiff perceived that the instructions she received at work, more and more, were making her spine injury worse.

66. On or about February 3, 2020, Plaintiff Ms. Parker spoke to the Chairperson of Defendant UTMB's Laboratory Services Department, Dr. Michael Laposata. She asked Dr. Laposata to assist her in avoiding the increasing and, by then, terribly painful tasks she was ordered to perform at work. Ms. Parker strenuously emphasized that she very much wanted to continue working at UTMB, but wanted to, and needed to, do so without lifting, bending, or other physical tasks that aggravate her spinal injury. She pled with Dr. Lindsey by reminding him that she hired for a financial position, not for a job that required heavy lifting.

67. Dr. Laposata listened and responded supportively, but did not act on any of the Plaintiff's requests. Instead, he instructed her to schedule another and different meeting, this time with Mr. Juan Garcia, the Director of Laboratory Services, and to ask Mr. Garcia to make a change to her job description.

68. Later in February of 2020, Ms. Parker submitted her second request for a permanent disability accommodation. As her abilities had worsened, Plaintiff stated that she now needed 10–15-minute rest periods, must not walk for long distances or long periods, and that she can only occasionally lift items that weigh less than 10 pounds.

69.     After a brief investigation, Defendants again found no need for a permanent job accommodation.

70.     Defendants informed the Plaintiff that her position did not require long distances or periods of walking, or lifting more than ten pounds, as if the Plaintiff somehow could not, or did not, know what she was required to do almost every workday, and had no experience with the tasks that brought her instant, and lasting, pain.  The Plaintiff did know, because she felt the agonizing consequences, every day.

71.     Defendants did inform Plaintiff that, at times, rest breaks of 10-15 minutes would be available.

72.     In their response, Defendants described Plaintiff's principal request as a request to "be allowed extra time to ambulate to appropriate location to work secondary to her health condition."  Plaintiff, did not then, and does not now, know what this means, or was intended to mean.

73.     In February, 2020, Plaintiff met with Ms. Bernadette Simmons of UTMB to discuss UTMB's denial of permanent accommodations.

74.     Around the same time, Plaintiff emailed Defendant Ms., Lockett-Ware to ask why the requested accommodations were denied.  Later, a meeting occurred with Ms. Lockett-Ware, Ms. Philesha Evans, and the Plaintiff to discuss Plaintiff's accommodation requests.  That meeting had no useful result.

75.     Around this time, Defendant UTMB changed Plaintiff's work hours, which, from that point forward, was from 8:30 a.m. to 5:30 p.m.

76.     Upon the onset of the Covid-19 (coronavirus) pandemic and rapid changes to how people across Texas, across the United States, and across the world did their work,

Plaintiff Parker's workstation at UTMB was relocated from where she was used to working, and had a modicum of quiet and privacy, to a cubical that was open and exposed to all laboratory employees. The Plaintiff thought this change greatly enhanced the chances of her catching this dreaded, and often fatal disease, at work.

77. Plaintiff Parker's Addison Disease, as well as her advanced years, added to the Plaintiff's worry that the workstation change put her at a severe risk of contagion. The Plaintiff was reading how the virus was far more difficult for elderly patients, both in terms of its severity and its morbidity.

78. Because of her fears of contagion, Defendant requested UTMB to be permitted to telecommute from her home, thereby being safer from the possibility of contagion. Ms. Parker thought working from home would enable her to continue to make a valuable contribution to UTMB, while protecting herself and her co-workers. Working from home would also eliminate the requirement to lift and carry heaving boxes, and would end the constant bending she had to engage in while working at the laboratory.

79. Parker's request to work remotely was granted.

80. Also around this time, UTMB, finally, promised to end any lifting tasks and assignments.

81. The most likely explanation for UTMB's 2020 steps, including the permission to work from home, and the termination of the requirement that Plaintiff lift and carry heavy boxes was that UTMB was responding to Plaintiff's prior learned counsel's demand letter.

82.     While certain changes, that improved things for Plaintiff did occur after that demand letter, no settlement funds were offered or paid.

83.     At a date in 2020, currently unknown, Plaintiff's supervisor sternly suggested to Plaintiff that she forgo any further efforts for an accommodation under the Americans With Disabilities Act and, instead, file for disability benefits with the United States Social Security Administration.

84.     Plaintiff was outraged at this recommendation.  First, assuming, as she did, that UTMB was not recommending that Plaintiff commit a fraud upon the United States government, then the recommendation implicitly acknowledged that Plaintiff was a disabled person, thereby leaving Plaintiff bewildered as to why the requested accommodations were denied for so long.

85.     Second, the recommendation was demeaning because the underlying message was: your disability prevents you from working for a living.  This was not the case. Plaintiff not only could work; she wanted to work.  She wanted to work, however, in the job for which she was hired, with the minor accommodations which were her right under the ADA.

86.     On or about April 27, 2020, Plaintiff Parker filed a discrimination complain with United States Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination and unlawful retaliation.

87.     On or about April 28, 2020, UTMB's Department of Internal Investigations found "no substantiation of complaint of age or race discrimination, and no substantiation of allegation of adverse action based on disability, use of [the] FMLA, or Client's complaint to the Dept. of Internal Investigations."

88.     On or about April 29, 2020, Defendant UTMB submitted a rebuttal to Gwendolyn

        Parker's EEOC Complaint.  UTMB's argument to the EEOC appeared to be that any

        necessary accommodation was granted by UTMB, noting the telecommuting

        privileges and change of Client's work schedule.  UTMB, in making this point, chose

        to ignore, completely, its explicit denial of Plaintiff's accommodation requests, and

        failed to make any connection with Ms. Parker's disability and the 2020 minor

        change in work hours.

89.     Also in its response to the EEOC, Defendant UTMB again made the factual assertion

        that the Defendant's employment did not require her to perform the tasks proscribed

        by her doctor.  UTMB made this assertion without explaining why the Plaintiff had to

        be ordered to leave the premises when she came with her doctor's instructions, or

        why her job responsibilities were specifically amended to include the distribution,

        that is lifting and carrying of boxes, weighted down with departmental supplies. with

        its concomitant constant bending.


**First Cause of Action:**

**Discrimination and Harassment in Violation of the American With Disabilities Act**

90.     Plaintiff hereby re-alleges each and every allegation in paragraphs 1 through 89,

        inclusive, as if fully set forth herein.

91.     Defendants have discriminated against the Plaintiff on the basis of her disability in

        violation of the Americans with Disabilities Act, 47 U.S.C. §12101, *et. seq*., by

        declining to make reasonable accommodations to her administrative position to

permit her to perform it without doing the tasks that were not needed to fulfill her job responsibilities and which substantially aggravated both the Plaintiff's disability and the pain she suffered from it.

92. Defendants were under a statutory obligation to make reasonable accommodations so that Plaintiff, a disabled person, could perform her job and continue to make a valuable contribution at UTMB.

93. Being required to lift, and carry, heavy boxes and objects, to frequently bend, and to walk throughout her day not only left the Plaintiff's more disabled, it also made her forthcoming retirement less enjoyable.  By insisting that she carry and haul heavy objects, and by insisting on similar tasks, Defendants robbed the Plaintiff of retirement years that could have been, and should have been, pleasant, with minimal pain, and with easy-going mobility.

94. Defendants failed to honor their obligations to make reasonable accommodations in light of Plaintiff's disability.

95. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, and its violations of the Americans with Disabilities Act, Plaintiff has suffered, and continue to suffer, severe mental anguish and draining emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical pain and discomfort, for which she is entitled to an award of monetary damages and other relief.

96. Defendants' unlawful and discriminatory conduct of the ADA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of

Plaintiff's civil rights, entitling Plaintiff to an award of punitive (exemplary) damages.

## Second Cause of Action:
## Race Discrimination in Violation of the Civil Rights Act of 1964

97.    Plaintiff hereby re-alleges each and every allegation in paragraphs 1 through 96, inclusive, as if fully set forth herein.

98.    Defendants have discriminated against the Plaintiff on the basis of her race, to wit African American, in violation of the anti-race discrimination in employment provisions of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq*., by denying her the simple accommodations, temporary and permanent, that it granted to one or more white employees in similar predicaments and with similar disabilities.

99.    Defendants further violated the Civil Rights Act by denying to the Plaintiff the same terms and conditions of employment available to employees who are not African American, including, but not limited to, subjecting her to onerous and hazardous working conditions, and denying her the opportunity to work in an employment setting that did not, on a daily or near-daily basis, make her injuries and disability worse.

100.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the Civil Rights Act, Plaintiff has suffered, and continue to suffer, severe mental anguish and draining emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and

self-confidence, emotional pain and suffering, as well as physical injury, for which

she is entitled to an award of monetary damages and other relief.

101. Defendants' unlawful and discriminatory conduct in violation of the Civil Rights Act

was outrageous and malicious, was intended to injure Plaintiff, and was done with

conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of

punitive (exemplary) damages.


### Third Cause of Action

### Discrimination and Harassment in Violation of Section 1981

102. Plaintiff hereby re-alleges each and every allegation in paragraphs 1 through 101,

inclusive, as if fully set forth herein.

103. Defendants have discriminated against the Plaintiff on the basis of her race/color

(African-American) in violation of Section 1981, by denying her the same terms and

conditions of employment available to employees who are not African-American,

including, but not limited to, subjecting her to disparate working conditions, and

denying her the opportunity to work in an employment setting free of unlawful

harassment, and free of the additions of tangential tasks known by everyone around

the Plaintiff to worsen her injury and disability.

104. Defendants have discriminated against Plaintiff on the basis of his race/color in

violation of Section 1981 by denying to the Plaintiff the same terms and conditions of

employment available to employees who are not African American, including, but not

limited to, subjecting her to onerous and hazardous working conditions, and denying

her the opportunity to work in an employment setting that did not, on a daily or near-daily basis, make her injuries and disability worse.

105.   As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continue to suffer, severe mental anguish and draining emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

106.   Defendants' unlawful and discriminatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive (exemplary) damages.

**Fourth Cause of Action:**

**Retaliation in Violation of Section 1981**

107.   Plaintiff hereby re-alleges each and every allegation in paragraphs 1 through 106, inclusive, as if fully set forth herein.

108.   Defendants have retaliated against the Plaintiff in violation of Section 1981 for opposing and/or complaining of Defendant's discriminatory practices against herself by, *inter alia*, subjecting Plaintiff to acts of discrimination, harassment, and humiliation, and adding, physically, to her workload and physical tasks that she was

made to perform as part of her job.  The painful, shameful incidents imposed as retaliation included, but were not limited to, being ejected from the UTMB campus, as if Plaintiff were a criminal who had just been caught in some nefarious act.

109.    Another retaliation was being made to look like an invalid, when she could have, and should have, been allowed to perform her administrative tasks without lifting, excessive bending, and without having to work beyond what is absolutely necessary to do her job and to contribute to the safety of the department.

110.    As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continue to suffer, severe mental anguish and draining emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

111.    Defendants' unlawful and retaliatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive (exemplary) damages.

**Fifth Cause of Action:**

**Race, Color, and Disability Discrimination in Violation of the Texas Labor Code**

112.    Plaintiff hereby re-alleges each and every allegation in paragraphs 1 through 111, inclusive, as if fully set forth herein.

113.    Defendants have discriminated against Plaintiff on the basis of her race/color (African American) and/or national origin, in violation of Chapter 21 of the Texas Labor Code, by denying her the same terms and conditions of employment available to employees who are not African American, including, but not limited to, subjecting her to disparate working conditions and denying her the opportunity to work in a normal working employment environment and one that is free of unlawful harassment, disparate treatment, and humiliation.

114.    Defendants have discriminated against Plaintiff on the basis of her race/color and/or national origin in violation of Chapter 21 of the Texas Labor Code by creating, fostering, accepting, ratifying and/or otherwise failing to prevent, or to remedy, a hostile and/or discriminatory work environment.

115.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Chapter 21 of the Texas Labor Code, Plaintiff has suffered, and continue to suffer, severe mental anguish and exhausting emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

116.    Defendants' unlawful and discriminatory conduct in violation of Chapter 21 of the Texas Labor Code was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive (exemplary) damages.

**Sixth Cause of Action:**

**Disability Discrimination in Violation of the Texas Labor Code**

117.   Plaintiff hereby re-alleges each and every allegation in paragraphs 1 through 116, inclusive, as if fully set forth herein.

118.   Defendants have discriminated against the Plaintiff on the basis of her disability in violation of the anti-disability discrimination provision of §21.051 of the Texas Labor Code, by declining to make reasonable accommodations to her administrative position to permit her to perform it without doing the tasks that were not needed to fulfill her job responsibilities and which substantially aggravated both the Plaintiff's disability and the pain she suffered from it.

119.   Defendants have discriminated against Plaintiff on the basis of her disability in violation of Chapter 21 of the Texas Labor Code, by failing to take the simple, easy, and repeatedly requested steps and accommodations that would have enabled her to perform her administrative job notwithstanding her disability, and the resulting inability to lift items ten pounds or more, carry heavy items, bend frequently, or walk frequently.

120.   Being required to lift, carry heavy boxes and objects, and walk throughout her day, not only worsened the Plaintiff's injury, but left her more disabled, and made her forthcoming retirement less enjoyable.  By insisting that she carry and haul heavy objects, and by insisting on similar tasks, Defendant UTMB robbed the Plaintiff of retirement years that could have been, and should have been, pleasant, with minimal pain, and with easy-going mobility.

121.   Defendant UTMB was under a statutory obligation to make reasonable accommodations so that Plaintiff, a disabled person, could perform her job and continue to make a valuable contribution at UTMB.

122.   As a direct and proximate result of Defendants' unlawful and discriminatory conduct, and its violations of the state Labor Code, Plaintiff suffered, and continue to suffer, severe mental anguish and draining emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical pain and discomfort, for which she is entitled to an award of monetary damages and other relief.

123.   Defendants' unlawful and discriminatory conduct of the ADA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive (exemplary) damages.

**Seventh Cause of Action:**

**Negligent Hiring, Retention, and Supervision**

124.   Plaintiff hereby re-alleges each and every allegation in paragraphs 1 through 123, inclusive, as if fully set forth herein.

125.   Defendant UTMB violated its duty as Plaintiff's employer to provide a safe, inclusive, healthy, welcoming, diverse, accepting workplace, and to take reasonable steps to determine the fitness of Plaintiff's co-workers and supervisors, and to reasonably

supervise Plaintiff's co-workers and supervisors by, *inter alia*, failing and refusing to

investigate and/or take appropriate disciplinary or other action in response to repeated

unsatisfactory, and hurtful, negative responses to her pleas for simple work

accommodations because of her disability.

126.  Defendant UTMB further failed in this duty by failing to act when her condition

continued to deteriorate as a direct result of the mid-level managers' uniform failure

to lighten her workload, literally, and burden, in any way.

127.  Defendant UTMB further failed in this duty by failing to act when one of its senior

employees publicly humiliated Plaintiff by insisting she leave the UTMB campus

immediately.

128.  Defendant UTMB had actual knowledge of the undue risk of harm to which it was

thereby exposing Plaintiff based on Plaintiff's multiple written and verbal pleas,

discussions, forms, and complaints to her supervisors, ADA officers, Internal

Investigations, and other officials at the Defendant's facility.

129.  As a direct and proximate result of Defendant UTMB's breach of duty to supervise,

Plaintiff has been injured and has incurred damages thereby.


**Eighth Cause of Action:**

**Tortious Interference with Contract**

130.  Plaintiff hereby re-alleges each and every allegation in paragraphs 1 through 129,

inclusive, as if fully set forth herein.

131.   There was a contract or contractual relationship between Plaintiff and Defendant
       UTMB.

132.   This contract was subject to interference by individuals inside and outside of UTMB

133.   Defendant Ms. Lockett-Ware willfully and intentionally interfered with this contract.

134.   Such interference was the proximate cause damages for which Plaintiff herein sues.

**Ninth Cause of Action:**

**Defamation**

135.   Plaintiff hereby re-alleges each and every allegation in paragraphs 1 through 134,
       inclusive, as if fully set forth herein.

136.   Defendant Ms. Lockett-Ware made statements to other employees of UTMB about
       the character, work performance, intelligence, dedication, and professionalism of the
       Plaintiff.

137.   The statements made by Defendant Ms. Lockett-Ware about the character, work
       performance, intelligence, dedication, and professionalism of the Plaintiff were, and
       are, untrue.

138.   The statements made by Defendant Ms. Lockett-Ware about the character, work
       performance, intelligence, dedication, and professionalism of the Plaintiff were not
       privileged.

139.   Plaintiff Gwendolyn Parker is not a public figure, and Defendant Ms. Lockett-Ware
       does not have any constitutional privilege to defame Plaintiff.

140.   The statements made by Defendant Ms. Lockett-Ware harmed Plaintiff's reputation as a diligent, effective, and cooperative employee, and as a dedicated, effective nursing professional.

141.   As a direct and proximate cause of the statements made by Defendant Ms. Lockett-Ware, Plaintiff has suffered harm to her reputation, harm to the collegiality the Plaintiff once enjoyed at her work, as well as mental distress and anguish.

142.   The individual Defendants' defamatory statements were, and are, outrageous and malicious, were intended to injure Plaintiff, and were spoken with conscious disregard of Plaintiff's reputation and wellbeing, entitling Plaintiff to an award of punitive (exemplary) damages.

## Tenth Cause of Action:

## Intentional Infliction of Emotional Distress

143.   Plaintiff hereby re-alleges each and every allegation in paragraphs 1 through 142, inclusive, as if fully set forth herein.

144.   Defendants intentionally or recklessly, by the actions described herein, caused the Plaintiff severe emotional distress, which continues.

145.   Defendant's conduct was extreme and outrageous and proximately caused Plaintiff severe emotional distress.

146.   Plaintiff suffered damages for which Plaintiff herein sues.

## Claim for Legal Fees and Expenses

147.    Should she prevail, as expected, in this employment discrimination lawsuit, Plaintiff

Gwendolyn Parker is entitled to an award of her legal fees and expenses, pursuant to

42 U.S.C. §2000e-5 (k).

148.    Should she prevail, as expected, in her allegations of a violation (or violations) of the

Americans with Disabilities Act, Plaintiff Gwendolyn Parker is entitled to an award

of her legal fees and expenses, pursuant to 42 U.S.C. §12205.

149.    Should she prevail, as expected, in this employment discrimination lawsuit, the

Plaintiff is also entitled to an award of her legal fees and expenses, pursuant to

§21.259 of the Texas Labor Code.

150.    The Plaintiff respectfully claims for reimbursement of the entirety of her legal fees

and expenses, before, during, and following the present suit, as well as her costs of

court.


## PRAYER FOR RELIEF

WHEREFORE, your Plaintiff, Ms. Gwendolyn Parker respectfully prays that the

honorable Court enter judgment in her favor and against each Defendant, containing the

following relief:

a)      A declaratory judgment that the actions, conduct and practices of Defendants

complained of herein violate the laws of the United States and the laws of the

State of Texas;

b)     An award of damages, for which Defendants should be jointly and severally liable, in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all of her monetary and/or economic harm;

c)     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

d)     An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all of her non-monetary and/or compensatory harm, including, but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

e)     An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus pre-judgment interest;

f)     An award of punitive (exemplary) damages;

g)     An award of costs that Plaintiff has incurred in this action; and

h)     An award of the Plaintiff's reasonable attorneys' fees and expenses to the fullest extent permitted by law.

Plaintiff Gwendolyn Parker further prays for such other and further relief to which she might be entitled, or which this honorable Court may deem just and proper, whether in law or in equity, and whether under the Constitution, statutes, Rules, regulations, and common law of the United States, or the Constitution, statutes, and common law of the State of Texas.

## JURY DEMAND

Your Plaintiff, pursuant to the Seventh Amendment to the Constitution of the United

States, most respectfully demands a trial by jury on all issues of fact and damages stated herein.

Dated: Houston, Harris County, Texas

 April 21, 2021

                                        Respectfully submitted,

                                        ROBERT TEIR, PLLC
                                        3302 Canal Street
                                        Houston, Texas 77003-1824


                                        By:_____
                                             Robert Teir
                                             Member, College of the State Bar of Texas
                                             State Bar No. 00797940
                                             EM rob@teirlaw.com
                                             PH 832.365.1191
                                             FX 832.550.2700
                                                  Attorney for Plaintiff
                                                  Ms. Gwendolyn Parker